UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JULIA MCNEELY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:19-CV-002732-SEP |
| | ) |
| ANDREW M. SAUL, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the final decision of Defendant Andrew M. Saul, the Commissioner of Social Security, denying the application of Plaintiff Julia McNeely for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the Act). Because there is substantial evidence to support the decision denying benefits, the Court will affirm the Commissioner's denial of Plaintiff's application.

**I.    BACKGROUND**

On October 13, 2016, Plaintiff applied for DIB, alleging that she had been unable to work due to disability since January 30, 2009. (Tr. 141-45). Plaintiff's insured status under the Act expired on December 31, 2014.[1] (Tr. 13, 167). The Court will refer to the period between the date of alleged onset, January 30, 2009, and the date of Plaintiff's last insured status, December 31, 2014, as the "Relevant Period."

Plaintiff alleged disability based on depression, anxiety, degenerative disc disease, and fibromyalgia. (Tr. 185). Her application was initially denied on January 4, 2017. (Tr. 77-82). Plaintiff subsequently filed a Request for Hearing by Administrative Law Judge (ALJ). (Tr. 83).

---

[1] To be entitled to disability benefits under the Act, Plaintiff must prove that she was disabled *prior* to the expiration of her insured status. *See* C.F.R. § 404.130; *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009).

Plaintiff, who was represented by counsel, testified at her hearing that she was unable to work during the Relevant Period due to low self-esteem and anxiety. (Tr. 37). She testified that she lived with her mother and son, and that her son was between 6 and 11 years old during the Relevant Period. (Tr. 34-35). She further testified that she provided care for both her mother and son, and that she typically did all of the household chores, ran errands, shopped for groceries, and prepared approximately 90 percent of the family meals. (Tr. 35, 43, 47). She testified that she drove several times a week, driving her son to school every day and frequently driving him to baseball practices and games. (Tr. 34). She testified that she had undergone electroconvulsive therapy in 2013, but she received no benefit from the treatment. (Tr. 40). She also testified that she experienced periods of decompensation at least 40 percent of the time during the Relevant Period. (Tr. 55). During such times she was unable to do any of the activities she normally could do; she would just sit on the couch or lie in bed, sleeping or watching television. (Tr. 42-43, 52).

In an opinion issued on November 6, 2018, the ALJ found Plaintiff was not under a "disability" as defined in the Act. (Tr. 11-21). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council, and on August 9, 2019, the SSA's Appeals Council denied her Request for Review. (Tr. 1-4). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner.

As to Plaintiff's testimony, work history, and medical records, the Court accepts the facts as provided by the parties in their respective statements of facts and responses. The Court will address specific facts related to the issues raised by the parties as needed in the discussion below.

## II.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); [2] *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities;" if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c); *McCoy*, 648 F.3d at 611. At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner must assess the claimant's "residual functional capacity" (RFC), which is "the most a claimant can do despite [his or her] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)); *see also* 20 C.F.R. §§ 404.1520(e). At Step Four, the Commissioner determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform her past relevant work, she is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id.* At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether she can make an adjustment to other work in the national economy; if she cannot make such an

---

[2] All references throughout this opinion are to the version of the regulations that was in effect as of the date of the ALJ's decision.

3

adjustment, the claimant will be found disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that she is disabled. *Moore*, 572 F.3d at 523.  At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform.  *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

### III.	THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff had not engaged in substantial gainful activity during the Relevant Period; that Plaintiff has the severe impairments of the residual effects of a left ankle fracture, the residual effects of a hernia repair, obesity, anxiety, and depression; and that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 14).  The ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), except that she can only occasionally operate foot controls with her left foot, climb ramps or stairs, kneel, or crouch; can never crawl or climb ladders, ropes and scaffolds, and may not work at unprotected heights.  (Tr. 16). Additionally, because of her mental impairments, the ALJ found that Plaintiff is limited to jobs that involve simple, routine tasks, and while she could interact frequently with co-workers and the public, she could only interact occasionally with supervisors.  *Id*.

The ALJ did find that Plaintiff is unable to perform any of her past relevant work.  (Tr. 19).  But considering Plaintiff's age, education, and work experience, and in reliance on the testimony of a vocational expert (VE), the ALJ found that Plaintiff would be able to perform occupations including housekeeping (Dictionary of Occupational Titles (DOT) No. 323.687-014, 500,000 jobs in the national economy), poultry processor (DOT No. 525.687-070, 200,000 jobs in the national economy); and office helper (DOT No. 239.567-010, 80,000 jobs in the national economy).  (Tr. 20).  The ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from the alleged onset date through December 31, 2014, the date last insured.  *Id*.

### IV.	STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.  *See* 42 U.S.C.

4

§§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

**V.     DISCUSSION**

Plaintiff challenges the ALJ's decision on two grounds: (1) the RFC is not supported by substantial evidence because the record is "devoid" of any opinion by a physician or expert regarding her mental functional capacity; (2) the ALJ erroneously discredited her subjective statements regarding the intensity, persistence, and limiting effects of her mental symptoms. In response, the Commissioner maintains that the RFC is based on substantial evidence in the record as a whole, and the ALJ properly evaluated her subjective complaints.

**A.  RFC Evaluation**

A claimant's RFC is "the most a claimant can do despite [her] limitations." *Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). It is the ALJ's responsibility to determine a claimant's RFC "based on all relevant, credible evidence in the record, 'including the medical

5

records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) (quoting *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007)). But "[t]he interpretation of physicians' findings is a factual matter left to the ALJ's authority." *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016), and "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007).

Here, the ALJ reviewed Plaintiff's testimony and medical records, examined the consistency of her subjective complaints with the record evidence, analyzed the medical opinion in the record, and, with respect to Plaintiff's mental functional capacity, found that Plaintiff was limited to jobs that involve simple, routine tasks, and that while she could interact frequently with co-workers and the public, she could interact only occasionally with supervisors. (Tr. 16).

Plaintiff's assertion that the record is "devoid" of any opinion regarding her mental functional capacity is simply incorrect. And even if it were accurate, it would not necessitate remand. The Eighth Circuit has repeatedly held that "there is no requirement that an RFC finding be supported by a specific medical opinion," or indeed, any medical opinion at all. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). But this is not a case in which the ALJ made an RFC finding in the absence of all opinion evidence, relying solely on her own interpretation of the objective medical evidence. The record in this case contains an opinion from Dr. Luis Giuffra regarding Plaintiff's mental functional capacity.[3] (Tr. 1311-15).

Dr. Giuffra opined that Plaintiff had been totally disabled by her depression and anxiety since February of 2009. (Tr. 1311). He further opined that Plaintiff has "marked" limitations in her ability to timely complete tasks, avoid distractions, and sustain an ordinary routine. (Tr. 1312). He also noted "marked" limitations in her concentration, persistence, and pace, as well as

---

[3] The record also contains an opinion from State Agency Consultative Examiner Dr. Elissa Lewis (Tr. 67) regarding Plaintiff's mental status, but the ALJ determined the opinion was not supported by substantial evidence, as it was issued before the record contained sufficient medical evidence for her review. (Tr. 19).

6

her ability to understand or remember information. *Id*. He opined that Plaintiff had "extreme" limitations in her ability to regulate her emotions, control her behavior, and respond appropriately to requests, criticism, or suggestions. (Tr. 1313). He further opined that Plaintiff would be absent or would arrive late or leave early at least three times per month due to her mental limitations. (Tr. 1313). Dr. Giuffra noted that the objective signs of Plaintiff's mental condition included low mood, irregular sleep, poor energy, and death wishes. (Tr. 1315).

In her decision, the ALJ analyzed Dr. Giuffra's opinion as Plaintiff's treating physician, ultimately concluding that it could not be afforded significant weight, as it was inconsistent with Dr. Giuffra's observations in his treatment notes, as well as other evidence of record, including Plaintiff's daily activities from the Relevant Period, and the observations of Plaintiff's other health care providers. (Tr. 19). That conclusion was not improper. The RFC is an "administrative assessment," not a medical one, and therefore, "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). It is the ALJ's job to evaluate the entire record, and to weigh the opinions that may exist in light of all other credible evidence. *See Chaney v. Colvin*, 812 F.3d 676, 679 (8th Cir. 2016). An ALJ may discount a treating source opinion when it is inconsistent with other medical evidence in the record. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Here, the ALJ crafted an RFC that did not precisely mirror Dr. Giuffra's opinion, which was within her sound discretion, as "the ALJ is not required to rely entirely on a particular physician's opinion." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).

Furthermore, after thorough review of the record, the Court concludes that the ALJ's determination that Dr. Giuffra's opinion was not consistent with other evidence of record is supported by substantial evidence in the record.

First, the ALJ observed that, contrary to his opinion, Dr. Giuffra's contemporaneous notes indicate that Plaintiff's symptoms improved while under his care. (Tr. 17, 19). For example, his treatment notes indicate that Plaintiff reported to him that after undergoing electroconvulsive therapy (ECT) in 2013, she was doing "incredibly better" and had been more interactive with her family. (Tr. 330). Additionally, his treatment notes from every appointment with Plaintiff indicate that she exhibited logical and sequential thoughts, regular speech, appeared well-dressed and groomed, and had no suicidal thoughts. (Tr. 327- 33).

7

The ALJ also cited the infrequency of Plaintiff's treatment with Dr. Giuffra, noting that the record indicates that she met with him on an outpatient basis on only four occasions during the Relevant Period. (Tr. 18, 327-33). The ALJ also noted two lengthy gaps in treatment when Plaintiff did not consult with Dr. Giuffra for a year or more at a time. (Tr. 18, 327-33). Plaintiff testified that these gaps in treatment were due to the expense related to visiting a doctor, but she also acknowledged that she had Medicaid during the Relevant Period (Tr. 40, 49), and the record indicates that she visited other doctors for various conditions unrelated to her mental health on a regular basis, often visiting a doctor or emergency room every few weeks. For example, during one period in 2013 she consulted with a doctor for non-mental conditions—including shingles, abdominal pain, fever, chest pain, and an infected seroma—on January 11, February 22, February 27, March 6, May 9, May 16, May 29, June 7, June 10, June 20, July 2, and July 9. (Tr. 297, 299, 303, 306, 308, 376, 393, 395, 412, 415, 425, 427, 436, 463). Additionally, there is no evidence in the record that Plaintiff ever underwent inpatient treatment or intensive outpatient therapy for mental health conditions. *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (an ALJ may weigh conservative course of treatment as a negative factor in assessing claimant's self-reported symptoms).

Second, Plaintiff's other health care providers did not observe the marked or extreme mental limitations described by Dr. Giuffra. (Tr. 19). For example, Plaintiff's primary care physician Dr. Shanthi Kumar saw Plaintiff on multiple occasions during the Relevant Period. (Tr. 274-317). While Plaintiff sometimes complained of depression or anxiety, Dr. Kumar's mental status findings consistently reflected a normal mood. (Tr. 275, 284, 287, 290, 293, 297, 300, 303, 306, 310, 312, 315). Dr. Kumar frequently observed that Plaintiff had a pleasant demeanor, was alert, appeared well and healthy, and was always appropriately oriented to person, place, and time. (Tr. 274-75, 278, 284, 287, 290, 293, 297, 300, 303, 306, 310, 312, 315). He also noted that Plaintiff reported on multiple occasions that her depression and anxiety were under better control. (Tr. 292, 293, 299).

The record contains multiple similarly normal or unremarkable objective medical findings regarding her mental status, with health care providers at various times throughout the Relevant Period noting that Plaintiff exhibited a normal mood, did not appear anxious, acted appropriately, was pleasant during interactions, was alert and well oriented to person, place, and

8

time, and was not suicidal. (Tr. 357, 366, 373, 427, 428, 430-31, 436, 463-64, 483, 491, 504, 505, 527, 561, 609, 611, 617).

Third, the ALJ reasonably considered other inconsistencies between Plaintiff's testimony and the record. (Tr. 15-19, 34-55). As the ALJ discussed, during the Relevant Period Plaintiff engaged in a wide range of activities, including caring for her minor child and her elderly mother. (Tr. 15-19). She testified that she typically did all of the household chores, ran errands, shopped for groceries, and prepared approximately 90 percent of the family meals. (Tr. 35, 43, 47). She testified that she drove several times a week, driving her son to school every day, and frequently driving him to baseball practices and games. (Tr. 34). She testified that she never missed even one of her son's games. (Tr. 52). She also testified that, during the Relevant Period, she took road trips to Branson, Missouri, Potosi, Missouri, and Indianapolis, Indiana, during which she did all the navigating and driving. (Tr. 50). The extreme and marked limitations described by Dr. Giuffra are not consistent with Plaintiff' reported daily activities throughout the Relevant Period. *See Crawford v. Colvin*, 809 F.3d 404, 410 (8th Cir. 2015) (noting that an ALJ may consider "inconsistencies" in assessing subjective complaints); *Rogers v. Astrue*, 479 F. App'x 22, 23 (8th Cir. 2012) (affirming the ALJ's decision and noting that the ALJ had discounted the plaintiff's subjective complaints based on inconsistent statements the plaintiff had made).

While a claimant "need not prove she is bedridden or completely helpless to be found disabled," *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005) (internal quotation marks omitted), Plaintiff's daily activities can nonetheless be seen as inconsistent with her allegations of disability, and may be considered alongside other factors in assessing the severity of her symptoms. *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (finding "[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living" raised questions about the weight to give to her subjective complaints); Based on the foregoing, it was reasonable for the ALJ to conclude that Plaintiff's daily activities were not consistent with a disabling condition.

In sum, the Court finds that rather than unquestioningly adopting Dr. Giuffra's opinion, the ALJ properly considered the objective medical evidence and other evidence in the record and came to an RFC assessment that captured Plaintiff's limitations. The ALJ determined that Plaintiff's severe mental impairments resulted in functional limitations that limited her to simple,

9

routine tasks with limited interaction with supervisors.  The RFC represents a significant level of restriction, indicating that the ALJ did not reject Dr. Giuffra's opinion outright, but simply found Plaintiff's mental limitations were not as severe as he suggested.  For the foregoing reasons, the Court concludes that the RFC lies comfortably within "the available zone of choice," and is supported by substantial evidence in the record.  *Twyford* v. *Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 938 (8th Cir. 2006)).

### B.  Evaluation of Plaintiff's Subjective Complaints

Plaintiff's second argument is that the ALJ failed to properly evaluate Plaintiff's subjective complaints regarding the limiting effects of her symptoms related to depression and anxiety.  In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record."  Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017).[4]  In examining the record, the Commissioner must consider several factors, including the claimant's daily activities; the duration, intensity, and frequency of the symptoms; precipitating and aggravating factors; the dosage, effectiveness, and side effects of medication; any functional restrictions; the claimant's work history; and the objective medical evidence.  *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (citing *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008), and *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).  *See also* SSR 16-3p, 2017 WL 5180304, at *7-*8 (describing several of the above factors, as well as evidence of treatment other than medication that an individual receives); 20 C.F.R. § 404.1529(c)(3) (same).

SSR 16-3p states that "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence,

---

[4] This analysis was previously described as an analysis of the "credibility" of a claimant's subjective complaints.  However, the Commissioner has issued a new ruling, applicable to decisions made on or after March 28, 2016, that eliminates the use of the term "credibility" when evaluating subjective symptoms. SSR 16-3p, 2017 WL 5180304, at *1-*2 (Oct. 25, 2017).  This clarifies that "subjective symptom evaluation is not an examination of an individual's character." *Id.* at *2.  The factors to be considered remain the same under the new ruling. *See id.* at *13 n.27 ("Our regulations on evaluating symptoms are unchanged.").  *See also* 20 C.F.R. § 404.1529.

and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2007 WL 5108034, at *10. "The ALJ is not required to discuss each *Polaski* factor," however, "as long as 'he acknowledges and considers the factors before discounting a claimant's subjective complaints.'" *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) (quoting *Moore*, 572 F.3d at 524).

After reviewing the record, the Court finds that the ALJ conducted a proper assessment of Plaintiff's symptoms, consistent with SSR 16-3p and the relevant regulations, and that her assessment is supported by substantial evidence. As a preliminary matter, the Court notes that the ALJ did not entirely discredit Plaintiff's complaints regarding symptoms associated with her mental impairments. With respect to her mental functioning, the ALJ acknowledged Plaintiff's stated difficulties with anxiety and depression (Tr. 16-19), and the RFC accordingly limited her to simple, routine tasks in positions that required only occasional interaction with supervisors. (Tr. 16). To the extent that the ALJ did not find all of Plaintiff's claimed symptoms gave rise to limitations that should be incorporated into the RFC, the ALJ did so only after conducting an appropriate analysis of the record and the relevant factors, and making findings regarding the consistency of Plaintiff's asserted symptoms with the record. (Tr. 16-19).

First, the ALJ reasonably found Plaintiff's reported daily activities somewhat inconsistent with her complaints of disabling mental impairments. (Tr. 17). As discussed above, the record indicates that Plaintiff's daily routine was fairly normal during the Relevant Period. She frequently ran errands and went shopping (Tr. 34); regularly did household chores for herself, her son, and her elderly mother (Tr. 47); cared for her son (Tr. 45-47); and went on multiple lengthy road-trips, during which she did the driving and navigating (Tr. 50). While these activities by no means indicate that Plaintiff had no symptoms of anxiety and depression, her daily activities during the Relevant Period can nonetheless be seen as inconsistent with her subjective complaints of extreme symptoms, and they may be considered alongside other factors in assessing the severity of her subjective complaints. *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) (finding "[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living" raised questions about the weight to give to her subjective complaints); *Wagner v. Astrue*, 499 F.3d 842, 852-53 (8th Cir. 2007) (finding a claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that his

11

complaints were not fully credible); *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (finding that in assessing a claimant's credibility, the ALJ properly considered the fact that the claimant took care of her eleven-year-old child, drove her to school and did other driving, fixed simple meals, did housework, shopped for groceries, and had no difficulty handling money); *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009) ("[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints" of disabling symptoms.).

      Second, the ALJ reasonably considered that the objective medical evidence did not support Plaintiff's subjective complaints of disabling symptoms. (Tr. 16-19). As more fully discussed above, medical records from the Relevant Period indicate that her health care providers regularly noted generally normal mental examination findings. (Tr. 275, 284, 287, 290, 293, 297, 300, 303, 306, 310, 312, 315, 357, 366, 373, 427, 428, 430-31, 436, 463-64, 483, 491, 504, 505, 527, 561, 609, 611, 617).

      Third, the ALJ discussed and considered apparent inconsistencies between the record and Plaintiff's testimony about the efficacy of some of her treatment. (Tr. 17). At the hearing, when asked what benefit or effect she obtained from ECT treatments, Plaintiff testified, "None." (Tr. 41). However, contemporaneous notes in the record showed that Plaintiff reported to Dr. Kumar that her depression was "somewhat better" after the ECT treatment. (Tr. 299). Plaintiff reported to Dr. Giuffra that both she and her family noticed improvement after undergoing the treatment. (Tr. 329-30). Additionally, Dr. Giuffra noted that after ECT treatment, she was "incredibly better," and was able to interact with other people with greater ease. (Tr. 330).

      While the ALJ may not "disregard subjective complaints merely because there is no other evidence in support of the complaints, he may choose to disbelieve those subjective reports because there are inherent inconsistencies or other circumstances that cause the ALJ to question the reliability of the subjective reports." *Twyford*, 929 F.3d at 517-18. The ALJ also properly considered that Plaintiff reported some symptom improvement from her prescribed treatment. *See Hensley v. Colvin*, 829 F.3d 926, 933-34 (8th Cir. 2016) (If an impairment can be controlled by treatment or medication, it cannot be considered disabling).

      The Court finds that the ALJ conducted a proper evaluation of Plaintiff's claimed symptoms, considered relevant factors, and gave good reasons for finding those symptoms not entirely consistent with the record. The evaluation of a claimant's subjective symptoms is

"primarily for the ALJ to decide, not the courts." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016) (quotation marks omitted). Accordingly, the Court must defer to the ALJ's evaluation of Plaintiff's subjective symptoms. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (citing *Juszczyk v. Astrue*, 542 F.3d 626, 632 (8th Cir. 2008)).

## VI.  CONCLUSION

Having reviewed the entire record, the Court finds that the ALJ considered the medical evidence as a whole and made a proper RFC determination based on a fully and fairly developed record. Consequently, for all of the foregoing reasons, the Court determines that the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

Dated this 29th day of March, 2021.

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

13